IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**DOUGLAS WILLIAMS**,

        Plaintiff,

v.

**GRANT COUNTY, SHERIFF GLENN PALMER, JACKSON DEROSIER**, and **MICHAEL ALLEY**,

        Defendants.

Case No.  2:15-CV-01760-SU

ORDER ON
MOTION TO DISMISS

SULLIVAN, United States Magistrate Judge:

        Plaintiff was lodged at the Grant County Jail during the events that gave rise to this complaint.  Plaintiff alleges that defendants Grant County, County Sheriff Glenn Palmer, and sheriff's deputies Jackson Derosier and Michael Alley were deliberately indifferent to warnings plaintiff was suicidal and that defendant Derosier facilitated plaintiff's suicide attempt by providing him with a razor.  Plaintiff sues defendants under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment right to be free of cruel and unusual punishment.  He also sues Grant County for negligence under state tort law.  Defendants move to dismiss the claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under

Page 1 - ORDER ON MOTION TO DISMISS

Rule 12(b)(6). Plaintiff opposes the motion. For the following reasons, the Court denies the defendants' motion to dismiss.[1]

## BACKGROUND

In August 2013, plaintiff Douglas Williams, an Eastern Oregon resident who suffers from severe mental illness, was a pretrial detainee at the Grant County Jail . Compl., at 2-3; Tr., at 27. He alleges he began experiencing suicidal thoughts and "made it very clear to everyone at the jail." Compl., at 3. On September 15, 2013, plaintiff notified officers of his bad thoughts in a written note, known as an "inmate kite form." Compl.,at 3. At some point, plaintiff was placed on suicide watch and relocated so he was in full view of the control booth where correctional officers were stationed. Compl., at 3. However, the complaint alleges that no other suicide prevention protocols were implemented. Compl., at 3. On September 17, 2013, plaintiff filled out another kite form, stating that he needed help. Compl., at 3. A sheriff's deputy asked plaintiff if he was going to hurt himself, and plaintiff replied that he was not sure because he could not control his thoughts. Compl., at 3. That same day, plaintiff called his son to say goodbye. Compl., at 3. His son immediately called the sheriff's office, and spoke with defendant Alley, a deputy in the control booth. Compl., at 3. Plaintiff's son told defendant Alley that he needed to check on his father. Compl., at 3. According to the complaint, defendant Alley told the son that the plaintiff was not at the jail, and defendant Alley took no steps to prevent plaintiff's attempted suicide. Compl., at 3. On the morning of September 18, 2013, plaintiff asked deputy Derosier for a razor, and the deputy provided him with one. Compl., at 3. Subsequently, plaintiff used the razor to slash his wrist. Compl., at 3. Plaintiff

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636.

was immediately transported to the hospital and survived the suicide attempt. Compl., at 3.

State Department of Public Safety Standards and Training ("DPSST") records indicate that as of September 2013, defendants Alley and Derosier never received any mental health or suicide intervention training during their employment with the sheriff's department. Compl., at 4. The complaint alleges defendant Palmer received mental health training in 2009 but no suicide intervention training. Compl., at 4.

On September 17, 2015, plaintiff filed a complaint with this Court against Grant County, Sheriff Palmer, and deputies Derosier and Alley. Plaintiff brings claims under Section 1983, alleging that defendants Palmer, Derosier, and Alley violated his Eighth and Fourteenth Amendment rights by acting with deliberate indifference "to a serious mental health need and a serious risk of harm to Plaintiff," and that defendant Grant County violated plaintiff's Eighth and Fourteenth Amendment rights by failing to implement adequate policies, procedures, and training regarding mentally ill and suicidal inmates. Compl., at 4-5. Plaintiff also brings a negligence claim against Grant County, alleging its employees and agents were negligent in their conduct with plaintiff and their failure to implement sufficient policies, procedures, and training. Compl., at 6. On March 4, 2016, defendants filed a motion to dismiss the claims under Rule 12(b)(1) for lack of subject matter jurisdiction and supported the motion by extrinsic evidence. Defendants also moved to dismiss plaintiff's complaint under Rule 12(b)(6) for failure to state a claim.[2] Plaintiff opposes defendants'

---

[2] Defendants state their motions and arguments as five separate motions to dismiss: (1) under Rule 12(b)(1), plaintiff's Section 1983 claims against defendants Palmer, Derosier, and Alley for lack of subject matter jurisdiction; (2) under Rule 12(b)(6) plaintiff's Section 1983 claim against defendant Palmer for failure to state a claim; (3) under Rule 12(b)(6), plaintiff's Section 1983 claim against Grant County; (4) under Rule 12(b)(1), plaintiff's negligence claim against Grant County for lack of subject matter jurisdiction; and (5) under Rule 12(b)(6), plaintiff's negligence claim against Grant County for failure to state a claim. Defs.' Mot.

motion to dismiss and any consideration of the extrinsic evidence.

## LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), 8(a)(2). In order to survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard does not rise to the level of a probability requirement, but it demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1845 (2015) (quoting *Iqbal*, 566 U.S. at 678). A plaintiff need not detail all factual allegations, but the complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Iqbal*, 556 U.S. at 678. A court generally may not consider any material beyond the pleadings when deciding a Rule 12(b)(6) motion to dismiss.[3] *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Marder v. Lopez*, 450 F.3d 445, 448

---

Dismiss, at 7-8. Defendants' motion to dismiss does not seek Rule 12(b)(6) dismissal of the Section 1983 claims against defendants Derosier and Alley. However, the reply states: "In the event the Court declines to decide the question of qualified immunity under FRCP 12(b)(1), defendants request the matter be heard under FRCP 12(b)(6)." Defs.' Reply, at 3. In the reply, defendants also request for the first time that the Court convert the motion to dismiss to a motion for summary judgment. Defs.' Reply, at 3.

[3] There are exceptions which allow a court to consider extrinsic evidence and facts outside the complaint on a Rule 12(b)(6) motion to dismiss, but defendants do not invoke any of these exceptions here. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

(9th Cir. 2006); Fed. R. Civ. P. 12(d).  The court may only consider the extrinsic evidence by converting the motion to dismiss to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) *overruled on other grounds by Galbraith*, 307 F.3d 1119 (9th Cir. 2002); Fed. R. Civ. P. 12(d).

By contrast, "unlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider [outside] facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see Edison v. United States,* 822 F.3d 510, 517 (9th Cir. 2016); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear the claims at issue. Fed. R. Civ. P. 12(b)(1).  Specifically, a court may look beyond the pleadings when a defendant brings a "factual attack" disputing the substance of the allegations in a complaint as they pertain to subject matter jurisdiction. *Edison*, 822 F.3d at 517; *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).  Generally, a federal court has subject matter jurisdiction over an action if it arises under the Constitution or federal law, or if there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Other factors, including certain immunities, also affect the court's ability to hear the case.  See 28 U.S.C. §§ 1331, 1332(a).  If a court determines it lacks subject matter jurisdiction, it must dismiss the case.  Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

### I.  Section 1983 Claims Against Individual Defendants

Defendants move to dismiss the Section 1983 claims against defendants Palmer, Derosier,

and Alley for lack of subject matter jurisdiction under Rule 12(b)(1) or alternatively, under Rule 12(b)(6) for failure to state a claim.  Defs.' Mot. Dismiss, at 7, 18-28, 32-34; Defs.' Reply, at 3. Defendants seek to introduce extrinsic evidence in support of their Rule 12(b)(1) motion.  Defs.' Mot. Dismiss, at 18-19.  With respect to the Rule 12(b)(6) motion, defendants request that the Court convert the motion to dismiss to a motion for summary judgment so the Court may consider the extrinsic evidence.  Def.'s Reply, at 3.

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

In their Rule 12(b)(1) motion, defendants assert that the Court lacks subject matter jurisdiction, because the individual defendants have qualified immunity. Defs.' Mot. Dismiss, at 7, 18-28.  Defendants argue that qualified immunity is a jurisdictional issue that should be decided under the rubric of Rule 12(b)(1) rather than Rule 12(b)(6).  Defs.' Mot. Dismiss, at 18-20; Defs.' Reply, at 1-2. On that basis, defendants argue the Court should consider extrinsic evidence generally allowed only under Rule 12(b)(1) or a motion for summary judgment.  Defendants submit dozens of exhibits, including individual defendants' declarations, medical records, and witness declarations. *See* Doc. #22-27.  Plaintiff disagrees with defendants, and urges the Court to disregard the extrinsic evidence submitted by defendants.  Pl.'s Resp. Mot. Dismiss, at 1, 3-4.

Defendants do not cite any legal authority for the proposition that qualified immunity is an issue of subject matter jurisdiction that should be evaluated under Rule 12(b)(1).  At oral argument, they conceded they "did not find any authority directly on point."  Tr., at 9-10.  Rather, defendants analogize qualified immunity with sovereign immunity, arguing: "If a party is entitled to dismissal

for lack of jurisdiction due to sovereign immunity under the Federal Tort Claims Act, it follows that a party is entitled to dismissal for lack of jurisdiction where they have qualified immunity to claims under § 1983."[4] Defs.' Reply, at 2. The Court disagrees with defendants' argument. The Supreme Court has drawn a clear distinction between absolute immunities, such as sovereign immunity, and qualified immunity. "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976); *see Scheuer v. Rhodes*, 416 U.S. 232, 239, 243 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Accordingly, courts have concluded that a claim of entitlement to qualified immunity is properly brought as a motion to dismiss under Rule 12(b)(6), not Rule 12(b)(1). "Qualified immunity . . . is not jurisdictional and dismissal is warranted, if at all, only pursuant to Rule 12(b)(6)." *Uptergrove v. United States*, 2008 WL 2413182, at *5 (E.D. Cal. June 12, 2008); *Petty v. Shojaei*, 2013 WL 5890136, at *12-*13, *12 n.14 (C.D. Cal. Oct. 31, 2013).

The Court was unable to locate a single Ninth Circuit case which allowed for a Rule 12(b)(1) dismissal on qualified immunity grounds. However, numerous Supreme Court and Ninth Circuit cases address Rule 12(b)(6) motions to dismiss on qualified immunity grounds, and they elaborate standards and procedures for determining such motions. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662

---

[4] In making this statement, defendants cite to *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993). However, the case states only that sovereign immunity is a jurisdictional issue and does not discuss qualified immunity.

(2009)(articulating the overarching standard for Rule 12(b)(6) motions in a case determining qualified immunity); *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (when "defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies"); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("a Rule 12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies"); *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) ("To determine [qualified immunity], we must accept the allegations in the plaintiff's complaint as true" pursuant to Rule 12(b)(6)); *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).  Accordingly, the Court declines to consider qualified immunity as part of a Rule 12(b)(1) motion to dismiss.  The proper vehicle for defendants to assert qualified immunity here is a Rule 12(b)(6) motion to dismiss or, if appropriate, a motion for summary judgment.  The Rule 12(b)(1) motion to dismiss Section 1983 claims against individual defendants is denied.

### B.  Conversion of Motion to Dismiss into Motion for Summary Judgment

Before turning to defendants' alternative Rule 12(b)(6) motion, the Court addresses defendants' request that the Court convert that motion to dismiss to a motion for summary judgment. Defs.' Reply, at 3.[5]    As a general rule, when defendants move to dismiss and submit extrinsic

---

[5] Defendants' request is somewhat confusing as defendants ask "that Motion No. 1 be converted to a Motion for Summary Judgment," and "Motion No. 1" is a motion to dismiss under Rule 12(b)(1). Defs.' Reply, at 3; Defs.' Mot. Dismiss, at 7.  While the Federal Rules of Civil Procedure provide that, in appropriate circumstances, a Court may convert a Rule 12(b)(6) motion into a motion for summary judgment, there is no such provision for a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(d).  Accordingly, the Court interprets defendants request as seeking to

evidence, courts have discretion to consider the evidence by converting the motion to a motion for summary judgment.[6] *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1207 (9th Cir. 2007); *Arkema*, 719 F. Supp. 2d at 1330; *see* Fed. R. Civ. P. 12(d).  However, a court may not convert the motion to dismiss to one for summary judgment, unless the plaintiff first receives "both notice that the motion is pending and an adequate opportunity to respond." *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981); *see In re Rothery,* 143 F.3d 546, 549 (9th Cir. 1998); *see also* Fed. R. Civ. P. 12(d).  "Implicit in the 'opportunity to respond' is the requirement that sufficient time be afforded for discovery necessary to develop facts essential to justify a party's opposition to the motion." *Portland Retail Druggists Ass'n*, 662 F.2d at 645;  *Neuber v. Pritt*, 2015 WL 5965621, at *2 (D. Or. Oct. 13, 2015).

Here, defendants moved to dismiss partly on Rule 12(b)(1) grounds and stated they were submitting extrinsic evidence in support of those jurisdictional motions.  Only in their reply brief did defendants request the Court convert their motion to dismiss to one for summary judgment.  In support of conversion to summary judgment, defendants argue only that, "Summary Judgment is appropriate because Plaintiff has not submitted any evidence and there are no disputed issues of fact."  Defs.' Reply, at 3.  However, plaintiff only learned of defendants' conversion request in that

---

convert the Rule 12(b)(6) motion into a motion for summary judgment.

[6] Specifically, Rule 12(d) provides:
If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

same reply.   Moreover, discovery has not concluded as it was stayed pending the resolution of defendants' motion to dismiss.  *See* Doc. #18.  Under the present circumstances, conversion to a motion for summary judgment is not appropriate.  Accordingly, defendants' request should be denied and all extrinsic evidence excluded at this stage of proceedings.

### C.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

As explained above, the appropriate framework for deciding defendants' qualified immunity arguments is a Rule 12(b)(6) motion to dismiss for failure to state a claim.  A court may not dismiss a Rule 12(b)(6) motion on qualified immunity grounds unless it "can determine, based on the complaint itself, that qualified immunity applies."  *O'Brien*, 818 F.3d at 936 (quoting *Groten*, 251 F.3d at 851).  In making that determination, a court must decide (1) whether the factual allegations, taken in the light most favorable to the plaintiff, show defendants violated plaintiff's constitutional rights; and (2) whether those rights were "clearly established" at the time of the defendants' alleged misconduct.  *O'Brien*, 818 F.3d at 936; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  A court may consider the two questions in any order.  *Pearson*, 555 U.S. at 236.

Beginning with the second question, defendants argue that "the law governing a right to be protected from self-harm or attempted suicide was not clearly established" at the time of defendants' alleged misconduct.  Defs.' Mot. Dismiss, at 23-27.  In support of this argument, defendants cite *Taylor v. Barkes*, in which the Supreme Court held that the right was not clearly established as of November 2004. 135 S. Ct. 2042, 2044 (2015).  Defendants reliance on *Taylor* is misplaced.   Here, plaintiff alleges misconduct in 2013.  As of 2013, the Ninth Circuit had repeatedly held that pretrial

detainees have a "clearly established right" to mental health treatment, including suicide prevention, while in custody. *See, e.g., Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 2016 WL 4268955, at *6 (9th Cir. Aug. 15, 2016) (pre-trial detainees' rights to adequate suicide prevention measures were clearly established as of 2005); *Conn v. City of Reno*, 591 F.3d 1081, 1094-95, 1102 (9th Cir. 2010), *cert. granted, judgment vacated on other grounds* 563 U.S. 915 (2011), *and opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (holding it was clearly established that the Fourteenth Amendment "protects against deliberate indifference to a detainee's serious risk of suicide"); *De Vincenzi v. City of Chico*, 592 F. App'x 632, 634 (9th Cir. 2015) ("the officers' duty to provide adequate medical care, including suicide prevention [to an arrestee], was clearly established as of December 2009"); *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1461-62 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1087 (1989), *and opinion reinstated*, 886 F.2d 235 (9th Cir. 1989) (upholding verdict against county and jail commander who showed deliberate indifference to a pretrial detainee's risk of suicide). Thus, as of 2013 when the alleged misconduct occurred, plaintiff's right to adequate suicide prevention measures was clearly established.

Next, the question is whether the complaint alleges sufficient facts to establish a violation of that clearly established right. As plaintiff was a pretrial detainee, his claim must be analyzed under the Fourteenth Amendment. *Castro v. Cty. of Los Angeles*, 2016 WL 4268955, at *4 (9th Cir. Aug. 15, 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979)); *Johnson v. Corizon Health, Inc.*, 2015 WL 1549257, at *9 (D. Or. Apr. 6, 2015). Detainees who have been convicted of a crime

Page 11 - ORDER ON MOTION TO DISMISS

may sue prison officials under the Eighth Amendment's Cruel and Unusual Punishment Clause, but pretrial detainees must instead sue under the Fourteenth Amendment's Due Process Clause. *Id*. In doing so, pretrial detainees invoke their right to be free of punishment without due process. *Id.* In the past, the Ninth Circuit analyzed claims that corrections officials failed to protect inmates under the same "deliberate indifference" standard, regardless of whether the plaintiff was a convicted inmate or a pretrial detainee. *See, e.g., Clouthier* 591 F.3d at 1243-44; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010). However, the Ninth Circuit recently set forth a less stringent formulation of the "deliberate indifference" standard for pretrial detainee plaintiffs. *Castro,* 2016 WL 4268955, at *6-*7. Under *Castro v. Los Angeles*, a pretrial detainee establishes a Fourteenth Amendment failure-to-protect claim if he can show that: (1) defendant made an intentional decision with respect to the conditions of plaintiff's confinement; (2) plaintiff was exposed to a "substantial risk of serious harm . . . that could have been eliminated through reasonable and available measures"; (3) "defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;" and (4) by not taking those measures, defendant caused plaintiff's injuries.[7] *Id.*, at *7.

     Here, the factual allegations are sufficient under either standard. Plaintiff alleges that he and

---

[7] Before *Castro*, a pretrial detainee had the more challenging task of showing an individual defendant was "(a) subjectively aware of [plaintiff's] serious medical need and (b) failed adequately to respond." *Simmons*, 609 F.3d at 1017-18; *see Clouthier* 591 F.3d at 1242-43.

his son repeatedly informed deputies, including defendant Alley, that plaintiff was experiencing suicidal thoughts, but Alley and the others did not act on the information. Compl., at 3. Plaintiff alleges that, at some point, he was placed on suicide watch, but no other protocols were implemented to prevent his eventual suicide attempt. Compl., at 3. Plaintiff alleges that, although he was on suicide watch and had informed defendant Alley and other deputies of his suicidal thoughts, defendant Derosier provided him a razor which plaintiff used to attempt suicide. Compl., at 3.

As for defendant Palmer, a "supervisor need not be directly and personally involved . . . Rather, the supervisor's participation could include his own culpable action or inaction in the training, supervision, or control of his subordinates." *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011). Plaintiff alleges defendant Palmer failed to adequately train his subordinates and to implement and enforce policies and procedures regarding suicide prevention and inmate mental health needs. Compl., at 4. Specifically, plaintiff alleges that none of the defendants received any formal suicide prevention training during their employment, and that only defendant Palmer received mental health training. Compl., at 4. These allegations are sufficient to state claims that defendants Palmer, Alley, and DeRosier violated plaintiff's Fourteenth Amendment right. On a motion to dismiss, the plaintiff need not plead each detail of his case, but rather must allege facts, that if true, could allow a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009); *see Starr*, 652 F.3d at 1217. Plaintiff has done so here. Accordingly, the Court denies defendants' motion to dismiss as to the Section 1983 claims against defendants Palmer, Alley, and Derosier.

Page 13 - ORDER ON MOTION TO DISMISS

**II.  Section 1983 Claim Against Grant County**

In order to state a Section 1983 claim against a local government entity, a plaintiff may not rely on vicarious liability but must instead plead facts showing the municipality's policies or customs caused a constitutional violation.  *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 992-93 (9th Cir. 2011); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978). When the plaintiff bases such a claim on a failure to train municipal employees, that failure "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  The  plaintiff must allege facts showing the municipality "disregarded the known or obvious consequence" that its failure to train would cause employees to violate citizens' constitutional rights. *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014); *Connick,* 563 U.S. at 1360.  To that end, a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.*  However, in certain circumstances, the dire consequences of a failure to train might be "so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64; *see Canton*, 489 U.S. at 390, 390 n.10. A plaintiff can plead such "single-incident liability" by alleging circumstances in which the violation of a constitutional right was the "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520

U.S. 397, 409 (1997)).  For example, a city would be liable if it armed its police force with firearms and set them to work capturing fleeing felons without any training in the constitutional limitation on deadly force.  *Connick*, 563 U.S. at 63-64; *Canton*, 489 U.S. at 390 n.10.

Here, the complaint does not allege facts showing a pattern of similar constitutional violations.  Rather, plaintiff alleges that defendant Grant County set its deputies to work guarding inmates at the county jail without providing them any training in suicide prevention or the mental health needs of detainees.  Compl., at 4, 6.  The Court recognizes that so-called single-incident liability is rare but declines to foreclose the possibility at this early stage of the litigation.  Plaintiff's allegations are sufficient to state a plausible claim for municipal liability.  The Court denies defendants' motion to dismiss the Section 1983 claim against Grant County.

### III. Negligence Claim Against Grant County

Plaintiff alleges a  negligence claim against Grant County under Oregon law. Defendants make several arguments under Rule 12(b)(1) that the Court must dismiss the claim for lack of subject matter jurisdiction.  Defs.' Mot. Dismiss, at 8, 37-44.  In their motion to dismiss, defendants also argue the claim should be dismissed failure to state a claim under Rule 12(b)(6).  Defs.' Mot. Dismiss, at  8, 44-45

As stated above, a Rule 12(b)(1) motion to dismiss appears to be an incorrect vehicle for defendants' arguments.  However, the Court need not determine whether defendants' arguments are properly made under Rule 12(b)(1), or if they should instead be brought under Rule 12(b)(6).  The

arguments are legally deficient and would fail under either type of motion.

Defendants' first argument for dismissal of the negligence claim is based on the assumption that the Court will dismiss all of plaintiffs' Section 1983 claims and, thus, will lack a sound basis for exercising supplemental jurisdiction over the remaining state-law claim. Defs.' Mot. Dismiss, at 37-38. Such a decision is entirely within the Court's discretion. Here, defendants' assumption is not accurate, as the Court is not dismissing the Section 1983 claims. Those claims give rise to federal question jurisdiction and thus there is a sound basis, under 28 U.S.C. § 1367, for exercising supplemental jurisdiction over the negligence claim.

Second, defendants argue that the "State law negligence claim against the County is simply an attempt to hold the County vicariously liable for the § 1983 claims," and *Monell* and its progeny preclude vicarious liability. Defs.' Mot. Dismiss, at 39 (citing *Monell*, 436 U.S. 658). This argument attempts to inappropriately apply federal civil rights law to a state law negligence claim. This argument does not advance defendants' case.

Finally, defendants contend that the County is shielded from any negligence liability by statutory immunity under the Oregon Tort Claims Act ("OTCA"). Defs.' Mot. Dismiss, at 39-44. Defendants base their argument on O.R.S. § 30.265(5) of the OTCA, which states, in relevant part: "Every public body is immune from liability for any claim for injury to or death of any person . . . resulting from an act or omission of an [employee] when [that employee] is immune from liability." *See* Defs.' Mot. Dismiss, at 39-40. Defendants then argue that the County cannot be held liable for

the alleged torts of defendants Palmer, Alley, and Derosier because they all have qualified immunity and Palmer has discretionary immunity under the OTCA. Defs.' Mot. Dismiss, at 40.

Defendants improperly invoke Section 1983 qualified immunity in the context of Oregon tort law. The OTCA, not federal civil rights law, governs plaintiff's state-law negligence claim. Section 1983 qualified immunity has no bearing over whether the County may be held liable for negligence. Defendants' qualified immunity argument that defendants Palmer, Alley and Derosier are immune under the OTCA fails. The Court need not reach defendant's argument that defendant Palmer has discretionary immunity under O.R.S. § 30.265(6)(c). The County asserts defendant Palmer's discretionary immunity based on extrinsic evidence not appropriate at this state of the litigation. Even if plaintiff could not bring his negligence claim against the County on the basis of Palmer's alleged misconduct, plaintiff could still base his claim on the alleged acts and omissions of Derosier and Alley. Thus, the OTCA does not bar plaintiff's negligence claim against the County.[8] The Court denies the motion to dismiss the negligence claim.

---

[8] Defendants' concede compliance with the OTCA notice provision. Defs.' Reply, at 20.

Page 17 - ORDER ON MOTION TO DISMISS

**CONCLUSION**

The Court DENIES defendants' Motion to Dismiss (Doc. #21).  IT IS SO ORDERED.

DATED this <u>12th</u> day of September, 2016.

<u>/s/ Patricia Sullivan</u>

Patricia Sullivan
United States Magistrate Judge

Page 18 - ORDER ON MOTION TO DISMISS